FRED CARBONARA *et al.*, Petitioners-Appellants, v. NORTH PALOS FIRE PROTECTION DISTRICT *et al.*, Respondents-Appellees.

First District (5th Division)   No. 1—89—1181

Opinion filed December 15, 1989.

Mathias W. Delort, of Odelson & Sterk, Ltd., of Evergreen Park, for appellants.

Cecil A. Partee, State's Attorney, of Chicago (Joan S. Cherry, Deputy State's Attorney, and Robert F. Cleary, Assistant State's Attorney, of counsel), for appellee Stanley T. Kusper, Jr.

E. Kenneth Friker and David A. Izzo, both of Klein, Thorpe & Jenkins, Ltd., of Chicago, for appellee North Palos Fire Protection District.

JUSTICE LORENZ delivered the opinion of the court:

Fred Carbonara, Jayne A. Duewerth, Patricia A. Phelps, Stanley Chlopek, and David P. Phelps (petitioners) appeal from the dismissal of their petition for election contest.

We affirm.

Petitioners, all resident electors and legal voters in suburban Palos Township in Cook County, Illinois, successfully sought to place on the ballot in the general election held November 8, 1988, a referendum to transfer territory from the North Palos Fire Protection District to the Roberts Fire Protection District. The referendum, however, was defeated by a vote of 156 to 143 against the transfer.

Petitioners thereafter filed a petition, as amended, in the circuit court of Cook County against the North Palos Fire Protection District (North Palos) and the clerk of Cook County, seeking to nullify the results of the election. The petition stated that each of the precincts in which the election was held contained voters who resided in the territory and voters who resided outside the territory. Although election judges were provided with instructions as to which voters should vote on the fire district proposition, petitioners alleged, on information and belief, improprieties concerning the direction of voters.

More specifically, petitioners alleged that election judges in Palos precincts 11, 23, and 27 "failed or refused to properly direct" voters who were eligible to vote on the referendum to the appropriate voting booths. Petitioners alleged four voters in each of precincts 11 and 23, and five voters in precinct 27, were "never eventually directed to the proper voting booth and cast their ballot[s] at the improper voting booth."

As to Palos precinct 11, petitioners alleged at least 12 persons were directed to voting booths "without regard to whether or not the booths contained the appropriate ballot." Further, petitioners alleged voting booths in the precinct "did not bear a sign designating which type of ballot the booth contained." The petition named the four vot-

ers in the precinct who were eligible to vote on the referendum but could not because they were allegedly directed to the wrong voting booth.

Petitioners also alleged, generally, that "in several of the precincts" voters outside the territory were directed to the voting machine which contained the referendum.

In other allegations not made on information and belief, the petition stated the ballots failed to contain separate security punches as required under section 26A—6.1 of the Election Code (Ill. Rev. Stat. 1987, ch. 46, par. 24A—6.1). Because the same computer ballots were issued to all voters in the precincts, petitioners alleged, "a voter residing outside the territory may have punched a vote against the proposition by hand even though he was directed to the appropriate non-proposition voting booth."

North Palos moved to dismiss the amended petition pursuant to section 2—615 of the Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, par. 2—615), contending the allegations were insufficient to support nullification of the election and that petitioners had failed to allege facts to establish the election result would have been different had the alleged improprieties not existed.

The circuit court granted North Palos' motion on April 12, 1989. This appeal followed.

OPINION

■ Section 23—20 of the Election Code requires that election contest petitions must be verified by affidavit in the same manner as complaints in other civil cases may be verified. (Ill. Rev. Stat. 1987, ch. 46, par. 23—20.) Section 2—605 of the Code of Civil Procedure permits matters stated in verified pleadings to be stated upon information and belief. (Ill. Rev. Stat. 1987, ch. 110, par. 2—605(a).) We note that the allegations made on information and belief in the petition before us are supported by the signed certification of each petitioner, excepting Chlopek, that the undersigned "verily believe[d] the same to be true." Such signed statements are sufficient to support allegations in election contest petitions made on information and belief. (See *Clark v. Ulrich* (1984), 121 Ill. App. 3d 821, 460 N.E.2d 15.) The only issue before the court is whether the allegations made in the petition are sufficient to withstand respondent's motion to dismiss.

■ In *In re Contest of the Election for the Offices of Governor & Lieutenant Governor Held at the General Election on November 2, 1982* (1983), 93 Ill. 2d 463, 444 N.E.2d 170, the supreme court reconfirmed that election contest petitions must meet the strict pleading

requirements earlier set forth by the court in *Zahray v. Emricson* (1962), 25 Ill. 2d 121, 182 N.E.2d 756. In assessing the petition to challenge the results of the gubernatorial election of November 2, 1982, the court first considered the requirements for election contest petitions set forth in section 23—1.2 of the Election Code. Section 23—1.2 provides, in part, that the petition must contain:

"(d) A statement that each petitioner believes (i) mistake or fraud has been committed in the casting, counting or return or canvass of the votes for the office involved or (ii) there was some other irregularity in the contest of the contested election, or both;

(e) A statement declaring with particularity the specific precincts in which the mistake, fraud or irregularity relied upon *** was believed to have occurred, or such other grounds relied upon by petitioner;
***

(g) A statement declaring that, as a consequence of the mistake, fraud or irregularity alleged, the result of the election, as officially proclaimed, was incorrect;

(h) A statement declaring the Petitioner's belief as to which candidate did receive the highest number of votes[.]" (Ill. Rev. Stat. 1987, ch. 46, par. 23—1.2.)

Those requirements, the court concluded, must be presumed to have been enacted with knowledge of the strict pleading requirements set forth in *Zahray*, and subsequent cases decided prior to enactment which relied on *Zahray*. *In re Contest*, 93 Ill. 2d at 482-83, 444 N.E.2d at 179.

Under the pleading requirements set out in *Zahray*, the court observed, petitions seeking a vote recount must contain positive and clear assertions that the official results were incorrect and that the election result would be changed upon recount. (*In re Contest*, 93 Ill. 2d at 478-79, 444 N.E.2d at 176-77.) Further, allegations which, in substance, state only that the petitioners believe a recount would change the result of the election are insufficient to withstand a motion to dismiss. (*In re Contest*, 93 Ill. 2d at 478, 444 N.E.2d at 177.) Those requirements, the court stated, are "based upon the unwillingness of the courts to assume jurisdiction over a mere exploratory process seeking to overturn the results determined by sworn public officials, who are presumed to have performed their statutory duties." *In re Contest*, 93 Ill. 2d at 482, 444 N.E.2d at 139-40.

Petitioners here argue that the pleading requirements set out in *Zahray* and *In re Contest* apply only to "traditional" recount cases fa-

cilitated through discovery provisions provided in the Election Code. Petitioners point out that they do not dispute the accuracy of the vote count. Rather, petitioners argue that, because voters are misdirected, eligible voters did not vote on the referendum while ineligible voters were permitted to do so. Petitioners contend because the irregularities complained of would not appear on the face of the ballots and, therefore, the discovery process would be unavailing, we should relax the pleading requirements set out in *Zahray* and *In re Contest*.

■ We do not agree the petition's allegations may be viewed under different standards than as discussed in those cases. Section 23– 24 of the Election Code provides that challenges to elections involving public questions are to be instituted "in like form as in other cases of contested elections in the circuit court." (Ill. Rev. Stat. 1987, ch. 46, par. 23–24.) Petitioners have not cited, nor have we otherwise discovered, authority establishing that the measure of sufficiency of allegations in an election contest petition varies according to whether a vote recount is the remedy sought. Further, in neither *Zahray* nor in discussion of that case in *In re Contest* did the supreme court indicate exception to application of the strict pleading requirements even though the petition in *Zahray* included allegations "[t]hat unqualified voters had been permitted to vote[.]" See *Zahray*, 25 Ill. 2d at 123, 182 N.E.2d at 757; *In re Contest*, 93 Ill. 2d at 477, 444 N.E.2d at 137.

We believe the amended petition in the instant case fails to allege with the requisite specificity a basis to nullify the results of the November 8, 1988, election regarding the referendum. Although, regarding eligible voters, the petition stated which precincts and the number of voters involved in the alleged misdirection, even identifying the four voters in precinct 11, the petition falls short of positively stating how the alleged misdirection affected the ultimate outcome of the election. The petition does not state the allegedly misdirected eligible voters would have voted in favor of the transfer, but were precluded from doing so. Nor does the petition allege that the allegedly misdirected ineligible voters voted against the transfer or even actually voted on the referendum. Absent such allegations to establish that the ultimate result of the election would have been different, we believe the petition is fatally defective regarding misdirection of voters.

■ ■ We also do not believe that allegations regarding issuance of ballots which did not contain separate security punches provide a basis to reverse the trial judge's dismissal of the petition. Section 24A–6.1 of the Election Code states, in pertinent part:

> "In all elections conducted pursuant to this Article, ballot cards shall have a security punch. In precincts where more

than one ballot configuration may be voted upon, ballot cards shall have a different security punch for each ballot configuration. If a precinct has only one possible ballot configuration, the ballot cards must have a security punch to identify the election." Ill. Rev. Stat. 1987, ch. 46, par. 24A—6.1.

Although section 24A—6.1 uses the word "shall," we are aware that that term has been held merely directory in a variety of cases construing election statutes. (*Serwinski v. Board of Election Commissioners* (1987), 156 Ill. App. 3d 257, 509 N.E.2d 509.) Generally, in determining whether the provisions of an election statute are mandatory or directory, the supreme court has stated:

"[W]here the statute does not expressly declare its provisions to be mandatory or compliance therewith to be essential to its validity, the failure to strictly comply, in the absence of fraud or a showing that the merits of the election were affected thereby, is not fatal." *People ex rel. Meyer v. Kerner* (1966), 35 Ill. 2d 33, 39, 219 N.E.2d 617, 620.

We find reason to conclude that section 24A—6.1 is only directory, and, therefore, the failure to comply therewith cannot provide a basis for the relief sought by petitioners. We find no language in the Election Code expressly stating that the failure to comply with section 24A—6.1 voids an election. Indeed, inclusion of separate security punches in ballots would only insure that the votes of ineligible voters are not tabulated. However, because we have concluded in the first instance that the petition fails to sufficiently allege the election was affected with respect to ineligible voters, we find no basis to determine that the failure to provide security punches on the ballots would have affected the election's outcome.

Affirmed.

MURRAY, P.J., and PINCHAM,* J., concur.

---

*Justice Pincham participated in the decision prior to his resignation.