2023 IL App (1st) 220762-U

No. 1-22-0762

Order filed May 4, 2023

Fourth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| POLICEMEN'S BENEVOLENT & PROTECTIVE ASSOCIATION OF ILLINOIS, SERGEANTS' UNIT 156A, LIEUTENANTS' UNIT 156B, and CAPTAINS' UNIT 156C, | ) ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiffs-Appellants, | ) ) | |
| v. | ) ) | No. 20 CH 6601 |
| CITY OF CHICAGO, | ) ) | Honorable Thaddeus Wilson, |
| Defendant-Appellee. | ) | Judge, presiding. |

PRESIDING JUSTICE LAMPKIN delivered the judgment of the court.
Justices Hoffman and Martin concurred in the judgment.

**ORDER**

¶ 1    *Held*: The circuit court properly granted summary judgment in favor of the city on the unions' petition for review of an interest arbitration award on the issues of internal investigations of anonymous complaints and continued participation in a wellness plan.

¶ 2       Plaintiffs, the unions representing all sworn officers in the Chicago Police Department (CPD) who hold the rank of sergeant, lieutenant, or captain, and defendant, the City of Chicago, reached an impasse during negotiations of their collective bargaining agreements (CBAs). Plaintiffs invoked the contractual interest arbitration process, and the parties' dispute was referred to a Dispute Resolution Board (Board). The Board issued an arbitration award that, *inter alia*, (1) ruled that defendant could use an anonymous complaint affidavit override procedure in internal investigations of CPD sergeants, lieutenants, and captains, and (2) did not relieve plaintiffs' members from participation in a wellness program.

¶ 3       Plaintiffs petitioned the circuit court for review and a declaratory judgment against defendant, and the parties filed cross-motions for summary judgment. The circuit court affirmed the arbitration award by denying plaintiffs' motion for summary judgment and granting defendant's cross-motion for summary judgment.

¶ 4       On appeal, plaintiffs argue that (1) the Board exceeded its authority by considering defendant's anonymous complaint affidavit override proposal because plaintiffs' statutory right to be free from investigations based on anonymous complaints constituted a permissive subject of bargaining, (2) the Board's decision was arbitrary and capricious because defendant's anonymous complaint affidavit override proposal contravened Illinois law, and (3) the Board's failure to exercise its authority to remove plaintiffs' members from participation in the wellness plan was arbitrary and capricious.

¶ 5    For the reasons that follow, we affirm the judgment of the circuit court that affirmed the award of the Board by ruling in favor of defendant and against plaintiffs on their cross-motions for summary judgment.[1]

¶ 6                                    I. BACKGROUND

¶ 7    The plaintiffs and defendant have been parties to CBAs since 1999, and their most recent CBAs expired in June 2016. After three years of bargaining without reaching successor agreements, plaintiffs declared an impasse in April 2019. Because plaintiffs' members are sworn employees who do not have the right to strike under the Illinois Public Labor Relations Act (Labor Act) (5 ILCS 315/17 (West 2018)), plaintiffs, upon impasse, invoked the contractual interest arbitration process outlined in the CBAs and section 14 of the Labor Act (5 ILCS 315/14 (West 2018)). The interest arbitration process provides for referral of the parties' disputed items to a three-member Board, with each party appointing one member and the third member being jointly agreed upon by the parties. The Board conducted a five-day hearing that concluded in January 2020, and the parties filed both pre- and post-hearing briefs.

¶ 8    During the hearing, the Board heard evidence and argument concerning the parties' disputed issues, including language in the CBAs pertaining to the internal investigation of officer misconduct. (The provisions of the CBAs for sergeants, lieutenants and captains relevant to this appeal are identical.) Under the agreed upon provisions of the parties' CBAs, all complaints of officer misconduct are subject to a preliminary investigation. When the CPD receives a complaint, it assigns the complaint a complaint log (CL) number for tracking purposes. The complaint is then assigned to an investigator at either the Civilian Office of Police Accountability (COPA) or the

---

[1] In adherence with the requirements of Illinois Supreme Court Rule 352(a) (eff. July 1, 2018), this appeal has been resolved without oral argument upon the entry of a separate written order.

Bureau of Internal Affairs (BIA) for preliminary investigation. The agency converts a CL number to a complaint register (CR) number and conducts a full investigation only when an affidavit is obtained from either a known complaining witness or through the affidavit override process if the known witness does not sign an affidavit. This affidavit override process is explained below in section 6.10 of the CBAs. A full investigation includes interviewing the accused officer about the alleged misconduct. If the agency concludes that there is insufficient verifiable evidence prior to obtaining a CR number, the matter is administratively closed.

¶ 9 Specifically, according to the parties' most recent CBAs, they had agreed under article 6, entitled "Bill of Rights," section 6.1, entitled "Conduct of Disciplinary Investigation," and subsection E that no anonymous complaint made against a sergeant, lieutenant or captain could be made the subject of a complaint register investigation unless the allegation was a criminal offense. Subsection F provided that no anonymous complaint regarding residency or medical roll abuse could be made the subject of a complaint register investigation until verified, and no ramifications would result regarding issues other than residency or medical roll abuse from information discovered during an investigation of an anonymous complaint regarding residency or medical roll abuse unless the information was of a criminal nature.

¶ 10 Section 6.10 of the CBAs, entitled "Affidavits," read:

"When an allegation of misconduct against a [sergeant, lieutenant, or captain] is initiated by a non-Department member, and the allegation is not of a criminal nature within the meaning of Section 6.1(E) or does not regard residency or medical roll abuse within the meaning of Section 6.1(F), the Independent Police Review Authority or the Internal Affairs Division shall secure an affidavit from the complainant. If the complainant executes

the affidavit, the investigation shall proceed as a Complaint Register investigation. If the complainant refuses to execute the affidavit, the Independent Police Review Authority or the Internal Affairs Division shall, subject to the provisions below, proceed in accordance with the provisions applicable to Complaint Register investigations.

If the Independent Police Review Authority or the Internal Affairs Division determines to conduct a Complaint Register investigation where the complainant does not execute an affidavit, the appropriate official shall execute an affidavit stating that he/she has reviewed the evidence compiled in a preliminary investigation, and, based upon the sufficiency of the evidence, continued investigation of the allegation is necessary. For Independent Police Review Authority cases, the 'appropriate official' shall be the Commanding Officer of the Internal Affairs Division. For Internal Affairs Division cases, the 'appropriate official' shall be the Chief Administrator of the Independent Police Review Authority. If an affidavit is not executed by the Independent Police Review Authority or the Internal Affairs Division, the matter shall not be used by the Department with respect to any aspect of the [sergeant's, lieutenant's, or captain's] employment."

¶ 11     A 2005 side letter of understanding attached to each CBA provided that, in instances where an affidavit was necessary, and if the CPD's good faith attempt to obtain an affidavit from the citizen complainant within a reasonable time failed, then the head of either the Internal Affairs Division or the Office of Professional Standards may sign an affidavit that states he or she has reviewed objective verifiable evidence, specifies the evidence that has been reviewed, and affirms, in reliance on that evidence, that continued investigation is necessary. The side letter also states:

"The types of evidence the agency head must review and may rely upon will be dependent upon the type of case, but may include arrest and case reports, medical records, statements of witnesses and complainants, video or audio tapes, and photographs. This list is illustrative only and is not to be considered exclusive or exhaustive."

¶ 12    Plaintiffs' final proposal to the Board with respect to anonymous complaints was to maintain the status quo, which meant that (1) anonymous complaints could be converted to a CR, and members disciplined, only for alleged criminal, residency, and medical roll violations; (2) for all categories of misconduct, there was no affidavit requirement if the complainant was a CPD member; and (3) again for all categories, if an affidavit was necessary, there was no requirement that the person originally bringing the complaint be the one to execute the affidavit. By arguing to continue the status quo, plaintiffs urged the continuation of the general prohibition against anonymous complaints. The plaintiffs urged the Board to keep the language of sections 6.1.E, 6.1.F, and 6.10 of the CBAs, and the 2005 side letter as written.

¶ 13    In contrast, defendant's final proposal to the Board concerning the same provisions sought to amend those provisions to extend the affidavit override process used when *known complainants* refused to sign affidavits to *anonymous complaints* against sergeants, lieutenants, and captains that allege misconduct that is not criminal in nature. Specifically, defendant proposed that a CR investigation on an anonymous complaint could be commenced following information obtained in a preliminary CL investigation when the designated head of the investigative agency issues the requisite affidavit under CBA section 6.10.

¶ 14    In its June 26, 2020 award, the Board adopted defendant's proposal to extend the affidavit override procedure to anonymous complaints that allege misconduct that is not criminal in nature.

Additionally, the Board directed that in the event an anonymous complaint was not converted to a CR, it could not be used for any purpose, including promotional and assignment issues. The Board also ruled that plaintiffs were required to continue participating in the wellness plan established by the Labor Management Cooperation Committee (LMCC), wherein plaintiffs who did not adhere to the plan are assessed a $50 monthly penalty.

¶ 15    In reaching this decision, the Board chair found that defendant met a substantial burden of proof in establishing its position as to anonymous complaints and proposed language to address the issue. Specifically, the Board chair cited the recommendations of the mayor's police accountability task force, which stated that more cities were recognizing that the cost of forbidding anonymous complaints greatly exceeded the benefits, and "accepting anonymous complaints allows a police department to use an additional set of data as a management tool for proactively addressing performance problems."

¶ 16    The chair also cited the 2017 United States Department of Justice report, which stated that the failure to investigate anonymous complaints due to the city's CBAs with officers

> "impedes the ability to investigate and identify legitimate instances of misconduct. ***
> [G]iven the code of silence with CPD and a potential fear of retaliation, there are valid
> reasons a complainant may seek to report police misconduct anonymously, particularly if
> the complainant is a fellow officer. Indeed, it was an anonymous tip that led to the video
> release of the Laquan McDonald shooting."

The Justice Department recommended that the

> "City and CPD must create impartial, transparent, and effective internal and external
> oversight systems that will hold officers accountable in a timely manner for violations of

law, CPD policy, or CPD training. To that end, the City and CPD must *** [w]ork with police unions to modify practices and procedures for accepting complaints to make it easier for individuals to register formal complaints about police conduct; [and a]dopt practices to ensure the full and impartial investigation of all complaints ***."

¶ 17   The chair also cited the 2015 consent decree between defendant and the CPD to "undertake best efforts to ensure that all complaints, including anonymous complaints, can be the subject of a misconduct investigation." The chair noted that this provision was consistent with consent decrees and settlement agreements negotiated by the Department of Justice mandating acceptance of anonymous complaints, specifically in Baltimore; Newark; Ferguson, MO; Cleveland; Los Angeles County; Albuquerque; New Orleans; Washington, D.C.; Los Angeles P.D.; New Jersey State Police; Steubenville, OH; and Pittsburgh.

¶ 18   Furthermore, the chair noted that the inspector general of the City of Chicago has jurisdiction to use anonymous complaints in the investigation of city employees. Also, the model policy of the International Association of Chiefs of Police provides that complaints may be lodged anonymously. The chair discussed the "strike factor" and "art of the possible" concepts, and the concern that the signing of affidavit overrides must not be *pro forma*. Also, the chair added into each CBA Appendix O, which outlines a procedure for plaintiffs' members to contest an anonymous complaint through a grievance process. Based on the foregoing, the chair concluded that defendant "obtained the right to utilize anonymous complaints and the [union members] obtained the right of having the utilization of the anonymous complaint procedure reviewed by a neutral not affiliated with any investigative agency of either party." Defendant's appointee to the

Board "reluctantly joined the Neutral Chair with this award" and plaintiffs' appointee "vigorously" dissented.

¶ 19    Regarding the unions' members' continued participation in the wellness plan, the Board chair noted that wellness plans usually are based upon an incentive, not a fine. The chair stated that, "[b]ut for the lack of authority," he would have voted to eliminate the wellness plan and the financial penalty imposed based on the hostility the plan had created among the members. Defendant's appointee to the Board joined the chair, and plaintiffs' appointee dissented.

¶ 20    In July 2020, the Chicago City Council ratified the parties' new CBAs, which now permit the use of the affidavit override procedure for anonymous complaints when an individual alleges that a sergeant, lieutenant, or captain of the CPD has engaged in misconduct that is not criminal in nature, and the individual is anonymous or does not execute an affidavit, and the official of the designated investigative agency executes the requisite affidavit stating, *inter alia*, that he or she believes that further investigation into the alleged misconduct is necessary.

¶ 21    Also in July 2020, plaintiffs petitioned the circuit court for review and a declaratory judgment against defendant, seeking to set aside the June 26, 2020 arbitration award. Thereafter, the parties filed cross-motions for summary judgment.

¶ 22    Meanwhile, in December 2020, plaintiffs filed an unfair labor practice charge, case No. L-CA-21-026, with the Illinois Labor Relations Board. Plaintiffs alleged that defendant violated section 10(a)(4) of the Labor Act (5 ILCS 315/10(a)(4) (West 2018)), which makes it an unfair labor practice for a public employer to refuse to bargain collectively in good faith with its employees' bargaining representative. Specifically, plaintiffs alleged that defendant proposed what plaintiffs believe is a permissive subject of bargaining and then improperly pursued that subject in arbitration before the Board. In November 2021, the Illinois Labor Relations Board issued an order

advising the parties that it would hold resolution of the unfair labor practice charge in abeyance pending the court's resolution of plaintiffs' petition for review. This abeyance order noted that the court "will determine whether the [Board] Chairman's award exceeded his authority by issuing an award in violation of the [Disciplinary Act]." Accordingly, the order stated that the Illinois Labor Relations Board "shall retain jurisdiction over this matter and shall hold it in abeyance until the procedures authorized by the Uniform Arbitration Act are exhausted and have come to a conclusion."

¶ 23    On May 2, 2022, the circuit court, after reviewing the pleadings and hearing oral argument, granted summary judgment in favor of defendant and denied plaintiffs' cross-motion for summary judgment, thereby affirming the Board's arbitration award. The court declined to address plaintiffs' argument that the Board incorrectly determined that they waived their statutory right to be free from investigations based on anonymous complaints and whether that issue is a permissive subject of bargaining. Instead, the court ruled that (1) the Board's adoption of the affidavit override procedure satisfied any statutory requirement for a supporting affidavit, and (2) plaintiffs failed to show that the Board was empowered to direct the LMCC, which was not a party to the parties' CBAs, regarding whom to include in the wellness program.

¶ 24    Plaintiffs timely appealed.

¶ 25                                    II. ANALYSIS

¶ 26    On appeal, plaintiffs argue that (1) the Board exceeded its authority by considering defendant's anonymous complaint override proposal because plaintiffs' statutory right to be free from investigations based on anonymous complaints constituted a permissive subject of bargaining, (2) the Board's decision was arbitrary and capricious because defendant's anonymous complaint affidavit override procedure contravened Illinois law, and (3) the Board's failure to

exercise its authority to remove plaintiffs' members from participation in the wellness plan was arbitrary and capricious. Through their petition, plaintiffs sought a declaratory judgment invalidating CBA sections 6.1.E, 6.10 and Appendix O as "illegal provisions" and restoring section 6.1.F from the expired CBAs.

¶ 27    Because the object of arbitration is to avoid the formalities, delay and expenses of litigation in court, judicial review of an arbitration decision is highly deferential. *Seither & Cherry Co. v. Illinois Bank Building Corp.*, 95 Ill. App. 3d 191, 195 (1981); *Garver v. Ferguson*, 76 Ill. 2d 1, 9 (1979). As the U.S. Supreme Court has stated:

> "Arbitrators are judges chosen by the parties to decide the matters submitted to them, finally and without appeal. As a mode of settling disputes, it should receive every encouragement from courts of equity. If the award is within the submission, contains the honest decision of the arbitrators, after a full and fair hearing of the parties, a court of equity will not set it aside for error either in law or fact. A contrary course would be a substitution of the judgment of the chancellor in place of the judges chosen by the parties, and would make an award the commencement, not the end, of litigation." *Burchell v. Marsh*, 58 U.S. 344, 345 (1855).

Thus, whenever possible, a court must construe an award so as to uphold its validity. G*arver*, 76 Ill. 2d at 10. That a court might have decided the issue differently does not make an arbitrator's award arbitrary or capricious. *Town of Cicero v. Illinois Ass'n of Firefighters, IAFF Local 717*, 338 Ill. App. 3d 364, 376 (2003).

¶ 28    The Board's authority to render an award is grounded in Section 14(h) of the Labor Act (5 ILCS 315/14(h) (West 2018)), which enumerates the factors that the arbitration panel is to consider

in rendering its award. These factors include the lawful authority of the employer; stipulations of the parties; the interests and welfare of the public and the financial ability of the unit of government to meet those costs; comparison of the wages, hours and conditions of the employees with those of employees performing similar services in public and private employment in comparable communities; and changes in any of the foregoing circumstances during the pendency of the arbitration proceedings. *Id.*

¶ 29    Illinois courts recognize that judicial review of arbitration awards "extends only to those areas expressly stated by statute." *Edward Electric Co. v. Automation, Inc.*, 229 Ill. App. 3d 89, 97 (1992). This court's authority to review the Board's award is conferred by section 14(k) of the Labor Act (5 ILCS 315/14(k) (West 2018)). Section 14(k) establishes three discrete bases for judicial review of interest arbitration awards: (1) where the arbitration panel was without or exceeded its statutory authority; (2) where the arbitration panel's order is arbitrary or capricious; or (3) where the order was procured by fraud, collusion or other similar and unlawful means. 5 ILCS 315/14(k) (West 2018). An arbitration board's award is arbitrary or capricious when the board "(1) relies on factors which the legislature did not intend for the [board] to consider; (2) entirely fails to consider an important aspect of the problem; or (3) offers an explanation for its decision which runs counter to the evidence *** or which is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Greer v. Illinois Housing Development Authority*, 122 Ill. 2d 462, 505-06 (1988).

¶ 30                    A. Permissive Subject of Bargaining

¶ 31    Plaintiffs argue that the Board exceeded its authority by considering defendant's anonymous complaint override proposal because plaintiffs' alleged statutory right to be free from investigations predicated upon anonymous complaints is a permissive subject of bargaining, rather

than a mandatory subject, and arbitration boards may not issue awards concerning permissive subjects of bargaining.

¶ 32    This court will not determine whether plaintiffs' alleged right to be free from investigations pursuant to anonymous complaints is a permissive or mandatory subject of bargaining. Illinois courts have found that such disputes are best left to the applicable arbitration boards, due to their knowledge and expertise in the relevant fields. See *Wheaton Firefighters Union, Local 3706 v. Illinois Labor Relations Board*, 2016 IL App (2d) 160105, ¶ 26 (deferring to the arbitration board to address whether a proposal concerned a mandatory subject of bargaining); *Board of Trustees v. Illinois Education Labor Relations Board*, 244 Ill. App. 3d 945, 953 (1993) ("Determination of whether specific issues are mandatorily bargainable or not is best left to the [Illinois Educational Labor Relations Board], which has the knowledge and experience to balance the equities in a given case.").

¶ 33    The Labor Act's stated purpose is "to regulate labor relations between public employers and employees *** and resolution of disputes arising under collective bargaining agreements." 5 ILCS 315/2 (West 2018). Section 5 of the Labor Act (5 ILCS 315/5 (West 2018)) confers upon the Illinois Labor Relations Board jurisdiction over all collective bargaining matters. Given this statutory scheme, Illinois courts have consistently found that the Illinois Labor Relations Board has exclusive jurisdiction over disputes concerning bargaining, collective bargaining agreements and the statute itself. *See Cessna v. City of Danville*, 296 Ill. App. 3d 156 (1998); *Gantz v. McHenry County Sheriff's Department Merit Comm'n*, 296 Ill. App. 3d 335, 339-40 (1998); S*tahulak v. City of Chicago*, 291 Ill. App. 3d 824, 831 (1997); *Foley v. AFSCME Council 31*, 199 Ill. App. 3d 6, 10, 12 (1990). As the courts have repeatedly observed, "[c]oncurrent jurisdiction in the circuit

courts would allow inconsistent decisions and forum shopping, which would undermine the goal of uniformity sought to be achieved by the [Labor Act] ***." *Cessna*, 296 Ill. App. 3d at 163.

¶ 34 A determination of whether defendant's bargaining proposal concerned a permissive subject lies with the Illinois Labor Relations Board. The fact that the Illinois Labor Relations Board stayed its processing of plaintiffs' unfair labor practice charge does not alter this conclusion or somehow convey jurisdiction over the permissive/mandatory subject determination to the court. The Illinois Labor Relations Board's abeyance order says nothing about a court considering the permissive subject issue; instead, it noted that the court "will determine whether the [Board] Chairman's award exceeded his authority by issuing an award in violation of the [Disciplinary Act]."

¶ 35 Accordingly, this court will not consider this permissive/mandatory subject issue any further.

¶ 36                                    B. Alleged Violation of Illinois Law

¶ 37 Plaintiffs argue that the Board's award violated their statutory right to be free from investigations predicated upon anonymous complaints by allowing investigations into alleged misconduct to proceed upon the affidavit from an investigative agency official rather than upon an affidavit from a named individual or complainant. To support this argument, plaintiffs cite subsection (b) of section 3.8 of the Disciplinary Act, entitled "Admissions; counsel; verified complaint," which provides:

> "(b) Anyone filing a complaint against a sworn peace officer must have the
> complaint supported by a sworn affidavit. Any complaint, having been supported by a
> sworn affidavit, and having been found, in total or in part, to contain knowingly false

material information, shall be presented to the appropriate State's Attorney for a determination of prosecution." 50 ILCS 725/3.8(b) (West 2018).

Plaintiffs also rely on subsection (a) of section 15 of the Labor Act, entitled "Act Takes Precedence," which states:

"(a) In case of any conflict between the provisions of this Act and any other law (other than Section 5 of the State Employees Group Insurance Act of 1971 and other than the changes made to the Illinois Pension Code by this amendatory Act of the 96th General Assembly), executive order or administrative regulation relating to wages, hours and conditions of employment and employment relations, the provisions of this Act or any collective bargaining agreement negotiated thereunder shall prevail and control. *** *Nothing in this Act shall be construed to replace the necessity of complaints against a sworn peace officer, as defined in Section 2(a) of the [Disciplinary Act], from having a complaint supported by a sworn affidavit.*" (Emphasis added.) 5 ILCS 315/15(a) (West 2018).

¶ 38    Plaintiffs argue that only the Illinois legislature has the power to modify this sworn affidavit requirement because the legislature specifically limited Chicago's home rule authority related to this issue when the legislature enacted section 15(c) of the Labor Act (5 ILCS 315/15(c) (West 2018)), which provides:

"It is the public policy of this State, pursuant to paragraphs (h) and (i) of Section 6 of Article VII of the Illinois Constitution, that the provisions of this Act are the exclusive exercise by the State of powers and functions which might otherwise be exercised by home rule units. Such powers and functions may not be exercised concurrently, either directly or

indirectly, by any unit of local government, including any home rule unit, except as otherwise authorized by this Act."

Plaintiffs contend that the statutory language is clear and unambiguous that a complaint against a peace officer must be supported by a sworn affidavit, and defendant cannot modify or change this requirement.

¶ 39   Plaintiffs argue that the purpose of the provisions prohibiting anonymous complaints was to protect police officers from being subjected to false and maliciously made complaints. Specifically, plaintiffs cite section 3.8(b) of the Disciplinary Act (50 ILCS 725/3.8(b) (West 2018)), which required the investigatory agency to present information to the appropriate State's Attorney for potential prosecution if the sworn affidavit contained knowingly false material information. Plaintiffs complain that the scheme defendant crafted to override the affidavit requirement neuters the protections afforded to officers under section 3.8(b) because there are no consequences to the anonymous person filing a malicious or false complaint and malicious complaints will forever be a part of an officer's disciplinary history.

¶ 40   The resolution of this claim turns on the interpretation of statutory provisions of the Disciplinary Act and the Labor Act. The fundamental rule of statutory construction is to ascertain and give effect to the intent of the legislature. *DeLuna v. Burciaga*, 223 Ill. 2d 49, 59 (2006). To determine the legislature's intent, a court first looks to the statute's language, which is to be given its plain and ordinary meaning. *Harrisonville Telephone Co. v. Illinois Commerce Comm'n*, 212 Ill. 2d 237, 247 (2004). When the language of the statute is clear, it must be applied as written without resort to aids or tools of interpretation (*DeLuna*, 223 Ill. 2d at 59), and without " 'reading into it exceptions, limitations or conditions that the legislature did not express.' " *Garza v. Navistar*

*International Transportation Corp.*, 172 Ill. 2d 373, 378 (1996) (quoting *Solich v. George & Anna Portes Cancer Prevention Center of Chicago, Inc.*, 158 Ill. 2d 76, 83 (1994)). Where a statute is capable of more than one reasonable interpretation, the statute will be deemed ambiguous. *General Motors Corp. v. State of Illinois Motor Vehicle Review Board*, 224 Ill. 2d 1, 13 (2007). In that event, the court may consider extrinsic aids to construction, such as legislative history. *Millineum Maintenance Management, Inc. v. County of Lake*, 384 Ill. App. 3d 638, 648 (2008). The construction of a statute is a question of law, which we review *de novo*. *DeLuna*, 223 Ill. 2d at 59.

¶ 41   As a threshold matter, we note that the 2021 amendments to the Disciplinary Act do not govern this action because those amendments apply only to CBAs entered into after the July 1, 2021 effective date of Public Act 101-652. When plaintiffs filed their petition for review in July 2020, section 6 of the Disciplinary Act, entitled "Supersedure of provisions by collective bargaining agreements," expressly exempted disciplinary investigations that are covered by CBAs from the statute's coverage:

> "Except as otherwise provided in this Act, the provisions of this Act apply only to the extent there is not a collective bargaining agreement currently in effect dealing with the subject matter of this Act." 50 ILCS 725/6 (West 2018).

However, effective July 1, 2021, Public Act 101-652 repealed section 6 of the Disciplinary Act, thereby removing the subject of police discipline from collective bargaining. Furthermore, effective July 1, 2021, Public Act 101-652 amended section 3.8(b) of the Disciplinary Act, which now provides:

> "(b) It shall not be a requirement for a person filing a complaint against a sworn peace officer to have the complaint supported by a sworn affidavit or any other legal

- 17 -

documentation. This ban on an affidavit requirement shall apply to any collective bargaining agreements entered after the effective date of this provision." 50 ILCS 725/3.8 (West 2022).

¶ 42     Defendant argues that the Disciplinary Act and Labor Act do not apply to this dispute. First, the disciplinary procedure at issue here is part of the parties' CBAs and covers the same issues as the Disciplinary Act, and thus is subject to the express exemption created for CBAs set forth in section 6 of the Disciplinary Act. Defendant adds that plaintiffs' request that the court superimpose now-obsolete language from section 3.8 of the Disciplinary Act on the parties' agreements is nonsensical given the express exemption created for CBAs set forth in section 6 of the same statute.

¶ 43     Furthermore, defendant argues that the repeal of section 6 to remove the subject of police discipline from collective bargaining supports defendant's position that the affidavit requirement was historically subject to negotiation. Defendant contends that, before Public Act 101-652, section 6 of the Disciplinary Act meant that the parties were free to bargain provisions that differed from the statutory default language in former section 3.8 of the Disciplinary Act. According to defendant, now that there is a statutory ban of an affidavit requirement in section 3.8, the concurrent elimination of section 6 indicates that parties cannot bargain an affidavit requirement into their CBAs.

¶ 44     Defendant also argues that plaintiffs' reliance on section 15(a) of the Labor Act is unavailing because the phrase "Nothing in this Act" refers to the Labor Act, not the Disciplinary Act. Defendant argues that the Disciplinary Act, not the Labor Act, is the statute that speaks to an affidavit requirement, but only where there is no CBA that addresses officer discipline.

Accordingly, in that particular instance, section 3.8(b) of the Disciplinary Act becomes a gap filler, but gap filling is not required here because the parties have intentionally addressed officer discipline. Moreover, via section 6.1.F of their prior CBAs, the parties have made provision for investigations based on anonymous complaints in the limited circumstances of medical roll, residency and criminal violations. Defendant contends the fact that plaintiffs now seek to restore the status quo, which would include section 6.1.F and its anonymous complaint protocols, refutes their claim that anonymous complaint provisions are statutorily prohibited.

¶ 45    We need not resolve defendant's arguments regarding the non-applicability of the Disciplinary Act and Labor Act because, even assuming that these Acts apply to this dispute, the affidavit override process adopted by the Board in its award satisfies any alleged affidavit requirement.

¶ 46    The language contained in section 3.8(b) of the Disciplinary Act and section 15(a) of the Labor Act, upon which plaintiffs rely, is clear and unambiguous. The provisions do not require that the affidavit supporting a complaint against a sworn peace officer must be signed by the known complainant. Furthermore, this court will not read into these provisions a requirement that the sworn affidavits supporting an investigation into police misconduct need to be affidavits from the named complainant. Accordingly, we conclude that the Board did not act arbitrarily or capriciously when it adopted defendant's proposal to permit investigations into officer misconduct to proceed without an affidavit from either a known or an anonymous complainant when a statutorily designated agency official provides an affidavit that states he or she has reviewed objective verifiable evidence compiled in a preliminary investigation, specifies the evidence that has been reviewed, and, affirms based upon that evidence that continued investigation is necessary.

¶ 47    Construing the term "complainant" not to include one responsible for supervising and managing subordinates would lead to an absurd result where the supervisor or manager would be helpless to forward matters that come to his or her attention for further investigation. Also, there are circumstances where the victim or direct complainant of misconduct is a child or person unable to speak or write because they are infirm, mentally ill, missing under suspicious circumstances, or deceased. We reject plaintiffs' assertion that the Board's award results in anonymous complainants harming peace officers' careers and tarnishing their reputations without facing any consequences. To the contrary, a designated investigating official is compelled to swear under oath and penalty of perjury that sufficient facts exist to warrant further inquiry. This affidavit override procedure, which must be based on specified and objective verifiable evidence, serves as a check to protect peace officers from false and malicious anonymous complaints. If there is no evidence to support an affidavit from an agency head after they have reviewed the available evidence, the complaint goes no further.

¶ 48    We find support for this construction of the statutory provisions at issue here in *Sherwood v. City of Aurora*, 388 Ill. App. 3d 754 (2009), where the court stated that "[t]here are two types of affidavits, those based on personal knowledge and those based on information and belief." *Id.* at 759 (comparing *Carbonara v. North Palos Fire Protection District*, 192 Ill. App. 3d 275, 277 (1989) (indicating that election contest petitions and civil complaints may be verified by affidavit based upon information and belief) with Illinois Supreme Court Rule 191 (eff. July 1, 2002) (stating that affidavits in support of motions for summary judgment and certain other motions must be based on personal knowledge)). *Sherwood* found that the sworn affidavit requirement of section 3.8(b) of the Disciplinary Act was "not limited to one kind or the other, and [the court] cannot read into a statute any limitation that it does not express." 388 Ill. App. 3d at 759-60. *Sherwood*

concluded that "the plain language of the [Disciplinary] Act demonstrates that either type of affidavit is sufficient." *Id.* at 760. *Sherwood* found that its construction was consistent with the purpose of an affidavit in the context of section 3.8(b) of the Disciplinary Act because such an affidavit does not serve as a substitute for testimony at trial, unlike an affidavit in the summary judgment context. *Sherwood* further stated:

> "Instead, the only reasonable purpose of the affidavit requirement under section 3.8(b) is to discourage complainants from making false or malicious allegations against police officers. [Citation.] ***

> ***

> [Like an affidavit in support of a complaint for a search warrant,] an affidavit in support of a complaint alleging officer misconduct can be based on information and belief as long as it provides sufficient grounds to initiate an investigation and subject the affiant to a prosecution for perjury should the allegations turn out to be false. *** [T]he intent [of the affidavit is to] provide sufficiently reliable grounds to investigate alleged misconduct. Consequently, we hold that the affidavit requirement of section 3.8(b) allows either an affidavit based on personal knowledge or an affidavit based on information and belief." *Id.* at 760-61.

¶ 49     The affidavit override process adopted by the Board in its award satisfies any alleged statutory affidavit requirement. Under the affidavit override process, an agency official steps into the shoes of a complaining witness—whether that witness is known and refusing to testify, or unknown, so that the defendant cannot make a request from the witness—and swears, based on the preliminary evidence available, that an investigation is necessary and should proceed. Neither

the Disciplinary Act nor the Labor Act specifies *who* must execute the affidavit. As stated in *Sherwood*, 388 Ill. App. 3d at 761, an affidavit obtained under section 3.8(b) of the Disciplinary Act need not even be based on the complainant's personal knowledge; it is sufficient if the information is based on information and belief.

¶ 50    Among the statutorily enumerated factors that section 14(h) of the Labor Act directs an arbitrator to consider is "[t]he interests and welfare of the public and the financial ability of the unit of government to meet those costs." 5 ILCS 315/14(h)(3) (West 2018). Here, the interests and welfare of the public support the Board's award.

¶ 51    Under plaintiffs' proposed position, if an allegation of misconduct (not involving criminal, residency or medical violations) surfaced without an identifiable complainant, then that allegation, regardless of how serious or egregious it was and regardless of whether it was supported by objective, verifiable evidence, would not be investigated. Defendant should not be precluded from investigating such conduct solely because the complainant's identity is unknown, or, as in the case of a surveillance camera, does not even exist. First, Illinois courts have found void as against public policy arbitration awards rescinding discipline issued to public employees in critical positions who engaged in serious misconduct where the arbitrator's award was based on a technicality. *AFSCME v. Department of Central Management Services*, 173 Ill. 2d 299 (1996) (overturning an arbitrator's award reinstating a DCFS investigator who had lied about the welfare of children under her care based on a contract technicality, finding that such a result was contrary to public policy); *Chicago Fire Fighters Union, Local No. 2 v. City of Chicago*, 323 Ill. App. 3d 168 (2001) (overturning an arbitrator's award directing reinstatement of firefighters filmed drinking on duty and making racial slurs at a retirement party; while the Fire Department had delayed in opening an investigation, the

court found that the arbitrator had failed to consider the public policy favoring safe and effective fire prevention services).

¶ 52    Second, as noted in the Board's award, there is national recognition, as reflected in Department of Justice negotiated consent decrees and model policies adopted by professional organizations, that artificial barriers against the ability to conduct investigations undermine the credibility of policing.

¶ 53    Third, the rapidly changing nature of technology detracts from the old justifications for a prohibition against anonymous complaints. There was a time, even 20 years ago when the parties entered into their first CBAs, when, in the absence of a complainant, it was difficult to conduct a credible investigation. This is no longer the case today with the prevalence of cell phones, body worn cameras, and surveillance cameras maintained on the public way and by private businesses, among other kinds of evidence.

¶ 54    Fourth, failure to conduct a proper investigation of alleged misconduct exposes both defendant and the individual officer involved to potentially significant liability. An individual bringing a "color of state law" claim against an officer under section 1983 of the federal Civil Rights Act (42 U.S.C. §1983 (2020)) is not required to submit a sworn affidavit in order to file suit, but defendant and the accused officer could be left defenseless if misconduct allegations go uninvestigated absent a complaining witness's affidavit.

¶ 55    The Board's award is not contrary to either the Disciplinary Act or the Labor Act and in fact includes a supporting affidavit procedure. Also, the anonymous complaint investigation procedure adopted in the Board's award is consistent with the factors enumerated in section 14(h) of the Labor Act because they advance the "interests and welfare of the public" by ensuring that police misconduct is investigated. Based on the foregoing, we conclude that there is no conflict

between the Board's award and the Disciplinary Act and Labor Act. The Board neither exceeded its authority nor acted in an arbitrary and capricious manner by adopting defendant's anonymous complaint override proposal.

¶ 56                        C. Wellness Program Participation

¶ 57    Plaintiffs argue that the Board's decision to maintain the status quo with respect to section 12.2 of the CBAs concerning plaintiffs' continued participation in a benefits related LMCC and their members' participation in a wellness plan established by the LMCC in 2011 is arbitrary and capricious. Under the wellness plan, plaintiffs' members who did not participate were required to pay a monthly penalty of $50. Plaintiffs argue that the Board's determination that it lacked the authority to direct the LMCC to terminate plaintiffs' participation in the wellness program at issue was arbitrary and capricious because their participation in the wellness program was a mandatory subject of bargaining.

¶ 58    Defendant, however, argues that the determination was neither arbitrary nor capricious because the LMCC was not a party to the CBAs at issue and the Board reasoned, in arriving at its determination, that it doubted that the present parties would have arrived at a CBA if plaintiffs had been excluded from having to participate in the wellness program.

¶ 59    Plaintiffs cannot meet the arbitrary and capricious standard required to set aside the Board's determination with respect to section 12.2 of the CBAs. The Board found it "doubtful" that the parties would have arrived at a CBA with the elimination of plaintiffs' participation in the LMCC. Given that the wellness program was a product of the LMCC, and the LMCC was not a party to the parties' CBAs, plaintiffs failed to show that the Board was empowered to direct the LMCC to terminate plaintiffs' participation in the wellness program.

¶ 60 We conclude that the Board's ruling on plaintiffs' members' participation in the LMCC and wellness program is not arbitrary or capricious.

¶ 61                                III. CONCLUSION

¶ 62 For the foregoing reasons, we affirm the judgment of the circuit court that denied plaintiffs' motion for summary judgment and granted defendant's cross-motion for summary judgment and thereby affirmed the Board's arbitration award concerning internal investigations of anonymous complaints and continued participation in the wellness program.

¶ 63 Circuit court judgment affirmed.

¶ 64 Board decision affirmed.